U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUN 2 2 2015

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JASON M. SORRELLS,                §
                                  §
            Petitioner,           §
                                  §
v.                                §        No. 4:13-CV-959-A
                                  §
WILLIAM STEPHENS, Director,       §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
            Respondent.           §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jason M. Sorrells, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against William Stephens, Director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

The state appellate court summarized the factual and procedural background of the case as follows:

> Appellant moved out of Lesley Arterburn's trailer house on the outskirts of Granbury sometime around

Thanksgiving 2008.  One night just before Christmas, he went back to retrieve some of his belongings.  Friends were visiting Lesley that night, and one of them, Darla Jorden, walked outside to meet Appellant when he arrived.  Darla asked him what he wanted; he said his tent; she gathered it from the porch, tossed it into the back of his pickup truck, and asked him to leave. He refused, claiming there still were more things he wanted.  Darla replied that she did not see anything else, repeated her request that he leave, and suggested that he could deal with the other things later. Appellant got upset, which resulted in his yelling, swearing, and revving his engine.

Lesley and her other guests came out of the house. Randea Cowen, who had known Appellant for a couple of years, thought she could persuade him to come back for the rest of his things some other time.  While she talked to him in the doorway of his truck, Lesley walked up behind her.  Appellant and Lesley started arguing, and their argument escalated to Appellant's reaching past Randea and grabbing Lesley by the neck.

John Ahnson stepped in at that point and engaged Appellant in a fist fight.  The two tussled in the grass, on the concrete, and inside the bed of Appellant's pickup truck before Appellant retreated behind the steering wheel.  He gunned the motor and plowed through the yard, swerving at the others as they dodged and scattered.  After he left, Lesley and her guests retired to the house and called the sheriff's department.

Appellant stopped briefly at the trailer park where he was staying and then went to Curtis Proctor's house.  He asked Curtis if he could borrow a gun to take "deer hunting" in the morning.  Curtis lent him a rifle with a scope and four rounds of .30-06 ammunition.  Appellant took the rifle and hid in the woods across from Lesley's home.

Peering through the rifle scope from his hiding place, Appellant watched Patrol Sergeant Michelle Berry

2

and Deputy Toby Fries arrive and take statements from Lesley and her friends.  The deputies also photographed Lesley's and John's scrapes and bruises.

When the deputies left, Beverly, who had ridden with Randea, went outside and waited in Randea's car parked beside the trailer.

Randea, Lesley, Darla, and Billy Wiley were in the kitchen laughing and joking with John, who sat facing them on the living room couch.  Appellant slipped into the trailer through the back door, crept into the living room, and lowered the rifle to the back of John's head, taunting, "You think this is f—ing funny? I'll show you how funny it is."  Lesley and Darla grabbed their cell phones.  Lesley dialed 911 on hers, handed it to Billy, and walked toward Appellant while he tried to chamber a round.  The rifle jammed. Shaking the rifle, Appellant backed toward the front door.  When he reached the door, Lesley shoved him through.  Appellant pushed back to get inside, but Lesley and Darla held the door and locked it.  Randea ran to lock the back door.  Lesley slid to the floor and sat there while Billy and Darla spoke with the 911 operator.

Appellant climbed off the porch, ran several steps alongside the trailer, still shaking the rifle.  He finally dislodged the jammed cartridge, which dropped to the grass in the front yard.  Appellant chambered another round, aimed at the trailer, and opened fire.

The first bullet pierced the wall so close to Darla that she could smell it.  She dropped to the floor and started crawling to the back of the trailer. Appellant fired two more shots.  By the third one, Darla's ears were ringing badly, but she managed to stay on the line with the 911 operator.  As her friends scrambled for cover, Lesley remained planted by the front door.

When he stopped shooting, Appellant ran into the dark toward the road.  Bullets had punched eight entry

holes in the front of the trailer and nine exit holes out the back, leaving shattered windows and Christmas ornaments, bent and broken blinds, and a perforated couch in between.

The 911 operator dispatched Sergeant Berry and Deputy Fries back to Lesley's trailer to investigate the "shots fired call."  They were joined by Sergeants James Cromwell and William Watt and by Deputies Brad Duckett and William Drake.

Granbury Police Sergeant Cliff Clemons was on patrol when he heard 911 dispatch the deputies.  He drove to the city limits and waited near the back entrance of Lesley's subdivision.  After a few minutes, he saw Appellant's truck run the stop sign and go south on Highway 51 "at a fairly good pace."  Within a few minutes, Clemons had closed the gap.  Appellant then made a U-turn and drove toward Clemons's car, causing the officer to swerve into the ditch.

As Appellant sped northbound up 51, Officer Dirk Sain, responding to Clemons's call for backup, approached southbound.  Sain narrowly missed a collision with the pickup as it veered into his lane and forced him off the road.

Having learned that city police officers had narrowly missed a collision outside city limits, Texas Department of Public Safety (DPS) Trooper Nick Duecker drove southbound on 51 to investigate.  He saw Appellant followed by patrol cars with lights flashing turn in front of him east onto Neri Road and race toward Highway 144.

When the deputies reached Lesley's house, they heard over the radio that city units were chasing the suspect to 144.  After determining that no one at the trailer had been injured, they left to assist in the pursuit.

Appellant reached 144, turned south, and started rocking the truck back and forth, dislodging furniture

4

and a spare tire from the bed.  The pursuing officers drove around the obstacles and chased Appellant into the Nubbin Ridge RV Park, where his truck skidded to a stop in front of a large tree between two trailers.

Appellant climbed out of the truck with the rifle, and pacing nervously, pointed the rifle at officers in several patrol cars as they converged around the pickup.  He tossed the rifle into the bed, jumped into the bed, shouted for the officers to shoot him, picked up the rifle, cocked it, lifted it to his shoulder, and took aim.  As the officers formed a semi-perimeter, some of them aimed weapons at Appellant.  None fired, however, as it became apparent that at least one trailer within the line of fire was occupied.  After a brief standoff, Appellant surrendered and was arrested.

The grand jury returned two indictments charging Appellant with evading arrest, unlawful possession of a firearm, three counts of deadly conduct, and eleven counts of aggravated assault, including nine counts of aggravated assault against peace officers.

Appellant moved for and was granted funds to hire a psychiatrist to determine Appellant's competency to stand trial and sanity at the time of the offense.  The psychiatrist, Dr. Stephen Mark, examined Appellant, interviewed Appellant's family, reviewed his medical records, and determined that although Appellant was suffering the effects of grief and alcohol at the time of the offense, and that he had displayed faulty judgment, he was both competent to stand trial and legally sane at the time of the offense.

The jury found Appellant not guilty on one count of aggravated assault and guilty of evading arrest, unlawful possession of a firearm, one count of deadly conduct, and all nine counts of aggravated assault on peace officers.[2]  Appellant pleaded true to enhancement paragraphs alleging prior felonies, and the trial court set his punishment at two years' confinement in the state jail for evading arrest, two twenty-year prison sentences for deadly conduct and unlawful possession of

a firearm, respectively, and nine life sentences for aggravated assault.  All sentences were ordered to run concurrently.

> [2]The trial court granted the State's motion to dismiss two counts of deadly conduct and one count of aggravated assault.

> Appellant filed and presented a motion for new trial and was granted a hearing, but offered no evidence.  He argued only that the verdicts should be set aside as contrary to the law and the evidence, and that the trial court had discretion to grant a new trial in the interest of justice.  The motion was denied.

Mem. Op. 2-7, ECF No. 13-4.

The Second Court affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused petitioner's petitions for discretionary review.  Docket Sheets, ECF Nos. 13-2 & 16-3.  Petitioner also filed a state habeas application relevant to this federal petition, which was denied by the Texas Court of Criminal Appeals without written order.  Order, *Ex parte Smith*, No WR-78,214-01, ECF No. 16-3.

## II.  Issues

Generally, petitioner raises the following grounds for relief:

(1)  He was denied effective assistance of counsel at trial;

(2)  He was denied effective assistance of counsel on appeal;

(3)   He was denied the right to confront and cross-
      examine an adversarial witness;

(4)   The state denied him due process and a fair trial
      by withholding exculpatory evidence favorable to
      the defense;

(5)   The trial court abused its discretion and in doing so
      denied him due process and a fair trial; and

(6)   He was denied due process and a fair trial by the
      prosecutor engaging in misconduct.

Pet. 6-7D1, ECF No. 1.

### III.   Rule 5 Statement

Respondent believes that petitioner has sufficiently
exhausted his state court remedies as to the claims presented and
that the petition is neither barred by limitations nor
successive.  Resp't Ans. 7, ECF No. 20.

### IV.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened
standard of review provided for by the Anti-Terrorism and
Effective Death Penalty Act (AEDPA).  Under the Act, a writ of
habeas corpus should be granted only if a state court arrives at
a decision that is contrary to or an unreasonable application of
clearly established Supreme Court precedent or that is based on
an unreasonable determination of the facts in light of the record

7

before the state court. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011); 28 U.S.C. § 2254(d)(1)-(2). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 131 S. Ct. at 786.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. This presumption applies to all findings, express and implied. *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In that situation, a federal habeas court assumes that the state court applied the proper clearly established federal law to the facts of the case, express or implied, and then determines whether its decision was contrary to or objectively

8

unreasonable application of that law.  *Virgil v. Dretke,* 446 F.3d

598, 604 (5th Cir. 2006); 28 U.S.C. § 2254(d)(1).

### (1) and (2)  Ineffective Assistance of Counsel

Under his first and second grounds, petitioner claims he

received ineffective assistance of trial and appellate counsel.

A criminal defendant has a constitutional right to the effective

assistance of counsel at trial and on a first appeal as of right.

U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 393-95

(1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984);

*Anders v. California,* 386 U.S. 738, 744 (1967).  An ineffective

assistance claim is governed by the familiar standard set forth

in *Strickland v. Washington.*  466 U.S. at 668.  *See also Styron*

*v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the

*Strickland* standard to ineffective assistance claims against

appellate counsel).  To establish ineffective assistance of

counsel a petitioner must show (1) that counsel's performance

fell below an objective standard of reasonableness, and (2) that

but for counsel's deficient performance the result of the

proceeding would have been different.  *Strickland,* 466 U.S. at

688.  *Strickland* allows the habeas court to look at either prong

first; if either one is found dispositive, it is not necessary to

address the other.  *Id.* at 697; *Murray v. Maggio,* 736 F.2d 279,

282 (5th Cir. 1984).

No express findings of fact or conclusions of law were made by the state courts regarding petitioner's claims. The state habeas judge, who also presided over petitioner's trial, recommended denial of petitioner's state habeas application after finding there were "no controverted, previously unresolved issues of fact material to the legality of the Petitioner's conviction." SH3-writ WR-79,467-02 at 98, ECF No. 19-2. The recommendation was followed by the Texas Court of Criminal Appeals, which denied relief without hearing or written order. Therefore, this court assumes the state courts applied the *Strickland* standard to petitioner's ineffective-assistance claims, absent any indication that an incorrect standard was applied, and implies fact findings consistent with the state courts' denial of the claims.

Petitioner claims his trial attorneys were ineffective, separately and collectively, by-

    (a)    failing to request funds for a private investigator to assist with the defense, request subpoenas and attachment for John Ahnson and Billy Wiley, interview Lesley Arterburn before trial, and obtain the criminal records of the complainants and witnesses for the state, namely John Ahnson and Billy Wiley;

    (b)    failing to request funds from the trial court to hire a forensic ballistics expert to explain inconsistencies in the ballistic evidence gathered

by police, namely how there were eight entry and nine exit holes in Arterburn's trailer;

(c)   failing to secure additional funds beyond the $1,500.00 originally approved by the trial court for the psychiatric services of Dr. Stephen Mark, who could have provided mitigation evidence during the punishment phase;

(d)   failing to follow petitioner's wishes to have the jury assess his punishment;

(e)   failing to request that the state disclose any deals it had with any of the state's witnesses;

(f)   failing to object to improper closing arguments by the state;

(g)   failing to subpoena the 911 tape containing Curtis Proctor's call to the Sheriff's Department informing them that he had given petitioner only four shells;

(h)   failing to object to the trial court's order appointing a psychiatrist because it did not set out the elements of the insanity defense as required by the Texas Code of Criminal Procedure;

(I)   failing to properly and timely convey all plea bargain offers made by the state;

(j)   failing to file notice of intent to seek an insanity defense as part of the defense strategy and other proper pleadings to ensure petitioner was able to introduce evidence and expert testimony at trial on the issue;

(k)   failing to object to admission of the 911 call from Billy Wiley, who did not testify at trial;

(l)   failing to request a limiting instruction regarding introduction of the 911 calls from Billy Wiley and Darla Jordan;

11

(m)    failing to properly cross-examine the state
       witnesses or object to the denial of his right to
       confront and cross-examine John Ahnson and Billy
       Wiley.

Pet. 6-6A12, ECF No. 1.

Having reviewed the record in its entirety, this court
assumes the state courts concluded that petitioner failed to
demonstrate one or both prongs of the *Strickland* standard.
However, it is not necessary for this court to apply the first
prong, in light of the overwhelming evidence of petitioner's
guilt.  Absent prejudice, petitioner claims fail the second
*Strickland* prong.  *United States v. Royal,* 972 F.2d 643, 651 (5th
Cir. 1992).

Petitioner claims appellate counsel was ineffective by
failing to call witnesses during the motion-for-new-trial
hearing, including petitioner himself and his trial attorneys to
explain why they did not secure a mental health expert to testify
or make a formal bill of exception to preserve the issue on
appeal, and by failing to properly argue his sufficiency-of-the-
evidence claim.

Claims of uncalled witnesses "are not favored on federal
habeas review," because "the presentation of witnesses is
generally a matter of trial strategy and speculation about what

12

witnesses would have said on the stand is too uncertain."
*Woodfox v. Cain,* 609 F.3d 774, 808 (5th Cir. 2010).  As such, a
petitioner must demonstrate, by affidavits or otherwise, that a
witness would have been available and willing to testify and that
their testimony would have been favorable to the defense.  *Day v.*
*Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009).  Petitioner
presented no affidavits or other evidence in the state courts
explaining why appellate counsel called no witnesses at the
hearing or that potential witnesses were ready and willing to
testify on his behalf and their testimony would have resulted in
the motion being granted.  Failure to produce such evidence is
fatal to his claim of ineffective assistance.  Furthermore, it is
obvious from the record that trial counsel moved the trial court
to appoint a psychiatrist to evaluate petitioner and that the
trial court appointed Dr. Stephen Mark and granted $1500 for that
purpose.  Clerk's R. 11-14, ECF No. 16-6.  It is also obvious
from the record that trial counsel did not call Dr. Mark to
testify because the trial court denied counsel's request for
additional funds to pay Dr. Mark's $3000 fee to testify.  RR 5 of
6 at 7, ECF No. 17-5.

Petitioner's second claim also lacks merit.  Petitioner
asserts that appellate counsel failed to properly argue his

insufficiency-of-the-evidence claim "by misapprehending and thereafter failing to present the requisite intent element." Applying the *Jackson v. Virginia* standard, the Second Court of Appeals addressed the issue as follows:

> A person commits aggravated assault when he commits assault as defined in section 22.01 of the penal code while using or exhibiting a deadly weapon. A person commits assault as defined in section 22.01(a)(2) if he intentionally or knowingly threatens another with imminent bodily injury. Aggravated assault is a first-degree felony if committed against a person the actor knows is a public servant while the public servant is discharging an official duty. A peace officer is a public servant. The actor is presumed to have known the assaulted person was a public servant if the person was wearing a distinctive uniform or badge.
>
> Appellant does not contest the sufficiency of the evidence to prove that the officers were peace officers acting in their official capacities as such, that Appellant knew that they were, or that Appellant used or exhibited a deadly weapon, i.e., a firearm. What he does argue is that the evidence is insufficient because the jury was only guessing as opposed to reasonably inferring from the evidence that he intended to threaten the officers because the evidence shows that he only intended to commit "suicide by cop" rather than assault. We disagree.
>
> First, we note that Appellant misstates the requisite intent element by asserting that the evidence is insufficient to show that he intended to *assault* the officers. Appellant was found guilty on nine counts of aggravated assault of a public servant as charged in the indictment by intentionally or knowingly *threatening* the public servants with imminent bodily injury. So whether or not Appellant intended to assault the officers, the requisite culpable mental

state is to intentionally or knowingly threaten.

Second, and more importantly, Appellant's argument assumes that intent to threaten and intent to provoke assisted suicide are mutually exclusive. Logically, they are not. Assuming for the sake of argument that Appellant's goal was to provoke the officers into killing him. In order to achieve that goal, a credible threat to the officers or to a third party would be required. Without a credible threat to justify the officers' use of deadly force, it is unlikely that the officers would use it. In other words, Appellant's intent to commit suicide by cop would remain unrealized unless Appellant intentionally or knowingly threatened the officers.

Furthermore, viewed in the light most favorable to the verdicts, the evidence is sufficient to support a reasonable jury's belief beyond a reasonable doubt that Appellant intentionally or knowingly threatened all nine officers. Each officer specifically testified that Appellant pointed the rifle at him. Before that, the jury had already heard evidence that Appellant had grabbed a woman by the throat, tried to mow down several people with his pickup truck in her front yard, lied to a friend to get a high-powered rifle that he used to shoot holes in a trailer-full of people, led police on a high-speed chase in which he ran two patrol cars off the road by driving his pickup truck directly toward them, and violently rocked his pickup truck back and forth until it disgorged a large piece of furniture and a spare tire from its bed, which pursuing officers had to maneuver around. When he finally ended up cornered in the RV park, Appellant disregarded officers' repeated commands to disarm himself, shouted for them to shoot him because he was "going to prison anyway," racked his weapon, and drew a bead on the officers. We hold that the evidence is sufficient to show that Appellant intentionally or knowingly threatened the officers.

Mem. Op. 8-10, ECF No. 13-4 (citations omitted).

15

Based on the appellate court's discussion, even if counsel did "misstate the requisite intent element," the appellate court recognized counsel's mistake and properly addressed the claim. Because petitioner raises no meritorious issues, he cannot show he would have likely prevailed on appeal had counsel raised the claims. Petitioner's ineffective-assistance claims do not entitled him to relief.

### (3) Right to Confrontation

Petitioner claims his constitutional right to confront and cross-examine "adversarial" and "material" eye-witnesses was violated because John Ahnson and Billy Wiley, who were both complainants in his case, did not testify at trial. Pet. 7-7A1, ECF No. 1. Petitioner specifically complains of Arterburn's testimony regarding photos depicting Ahnson's injuries allegedly sustained during the incident. RR, vol. 3, 162-63, ECF No. 15-2.

The confrontation clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." *Cruz v. New York,* 481 U.S. 186, 189 (1987) (quoting U.S. CONST. amend. VI). The primary purpose behind this right is to secure for an accused the opportunity to confront witnesses against him, cross-examine and contradict them. A confrontation clause violation is subject to a harmless

error analysis. *Coy v. Iowa,* 487 U.S. 1012, 1021 (1988). The test is whether the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). Among the factors relevant to this determination are: (1) the importance of the witness's testimony in the prosecution of the case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case. *Cupit v. Whitley,* 28 F.3d 532, 539 (5th Cir. 1994). "Of these, the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless." *Id.*

In view of the properly admitted evidence against petitioner and the collateral nature of Arterburn's testimony pertaining to the photos and the photos themselves, it cannot be said that they had a substantial and injurious effect or influence in determining the jury's verdict. Petitioner is not entitled to relief under this claim.

### (4) *Brady* Violation

Petitioner next claims the state denied him due process and a fair trial by willfully withholding exculpatory evidence

17

favorable to the defense in the form of his cell phone.  Pet. 7,
ECF No. 1.  Petitioner asserts that his cell phone was
confiscated by the police at the time of his arrest and that it
contained text messages relevant to the offense, which were
photographed and used by the state in its case-in-chief.  Pet. 7-
7B1, ECF No. 1.  According to petitioner, the state could not
locate the cell phone during trial, but it was located and
returned to his family after trial with his text messages and
photographs previously saved deleted from the phone's memory.
Pet. 7B1, ECF No. 1.  Petitioner urges that certain text messages
between him and the police demonstrated that he requested
assistance in going over to Arterburn's house to retrieve his
personal property.  *Id.*

When the State withholds from a criminal defendant evidence
that is material to his guilt or punishment, it violates his
right to due process of law in violation of the Fourteenth
Amendment under *Brady v. Maryland,* 373 U.S. 83, 87 (1963).
Evidence is "material" within the meaning of *Brady* when there is
a reasonable probability that, had the evidence been disclosed,
the result of the proceeding would have been different.  In other
words, favorable evidence is subject to constitutionally mandated
disclosure when it "could reasonably be taken to put the whole

18

case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435 (1995); *accord Banks v. Dretke,* 540 U.S. 668, 698-699 (2004); *Strickler v. Greene,* 527 U.S. 263, 290 (1999).

Here, the text messages themselves were not relevant to whether petitioner committed the charged offenses. Further, testimony that petitioner had contact with law enforcement for the purpose of obtaining his personal property was in evidence. Thus, the text messages themselves would have been merely cumulative of evidence presented at trial. Petitioner is not entitled to relief under this claim.

### (5) Abuse of Discretion

Petitioner claims the trial court abused its discretion by (a) failing to approve sufficient funds for him to secure the expert testimony of Dr. Mark, (b) changing his notice of election for assessment of punishment by the jury, and (c) failing to orally enter an affirmative finding at the time of sentencing after the jury returned a general verdict. Pet. 7C1, ECF No. 1.

First, the trial court did not deny petitioner all access to expert assistance. Rather, the court granted petitioner's motion to appoint a psychiatrist to assist in his defense and granted $1500 for that purpose but denied his request for additional

19

funds.   The record is silent as to the court's reason.   In any

event, following his examination of petitioner, Dr. Mark opined

that petitioner was competent to stand trial and sane, "in the

legal sense," at the time he committed the offenses.   SH3-Writ

WR-79-467-02 at 80, ECF No. 19-2.   However, Dr. Mark did believe

that certain information should nevertheless be considered in the

punishment phase of petitioner's trial.   Specifically, in a

letter dated February 22, 2010, to petitioner's counsel, Dr. Mark

states:

> Jason has had anxiety and depression all his life.   He
> has had a diagnosis of bipolar disorder.   He has had
> substance abuse problems.   He has several relatives who
> are on medicine for depression and anxiety.   Alcohol
> problems also run in the family.   He was off of
> medications for approximately a week or so at the time
> of the incident that got him arrested.
>
> Jason tried to shoot himself in front of the police.
> He then asked them to shoot him.   In jail the next day,
> he tried to hang himself.
>
> Prior medications include Effexor, Elavil and Paxil,
> which are all for depression and anxiety, and Lithium,
> which is for bipolar disorder.
>
> At the time of the incident, he was suffering the
> effects of grief as well as alcohol.   Although he was
> sane in the legal sense, his judgment was faulty and
> hopefully the above data can be considered in his case.

Id.

Criminal defendants have a constitutional right to present

20

evidence in their own defense.  *Crane v. Kentucky*, 476 U.S. 683,
690 (1986).  However, "[a] defendant's right to present relevant
evidence is not unlimited, but rather is subject to reasonable
restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308
(1998).  The trial court provided funds to petitioner sufficient
to obtain opinions regarding a possible insanity defense and
petitioner's competency to stand trial.  Having reached
conclusions that petitioner was both sane at the time of the
offenses and competent to stand trial, Dr. Mark's testimony would
not have aided petitioner during the guilt/innocence phase.  Nor
has petitioner shown that Dr. Mark's live testimony would have
affected the outcome of the punishment phase by persuading the
trial court to impose more lenient sentences.  The parties agreed
to admission of Dr. Marks's February 22 letter in mitigation and
four witnesses testified during the punishment phase that when
petitioner was taking his medications, his symptoms lessened
dramatically.  RR, vol. 5, at 23-25, 28-29, 35-36, 39-42; ECF No.
17-5.  Therefore, the evidence was available to the trial court
for its consideration when assessing petitioner's punishment.

Petitioner next claims the trial court abused its discretion
by changing his notice of election for assessment of punishment
to be determined by the jury, to himself.  Pet. 7C1, ECF No. 1.

Although petitioner originally elected to have the jury assess his punishment in writing, the election was modified designating the trial judge to assess punishment, and the modification was initialed, although by whom is not clear.  Clerk's R. 22, ECF No. 16-6.  This court has found nothing in the record to explain the modification, other than the fact that the state habeas judge necessarily found the claim meritless.  Faced with a silent record, this court presumes that the state-court proceedings were regular and conformed to state law, especially in light of petitioner's failure to offer any evidence to the contrary. *Williams v. Babineaux,* 357 F.2d 481, 482 (5th Cir. 1966). Accordingly, this court presumes petitioner changed his election and, with the consent of the state, proceeded with a bench trial. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (West Supp. 2014).

Lastly, petitioner claims the trial court abused its discretion by failing to orally enter an affirmative finding at the time of sentencing after the jury entered a general verdict. Pet. 7C1, ECF No. 1.  Under state law, because a deadly weapon finding is not part of a sentence in a criminal case, the trial court is not required to orally pronounce such a finding as part of the sentence if the allegation of use of a deadly weapon is clear from the face of the charging instrument.  *Ex parte*

*Huskins,* 176 S.W.3d 818, 820-21 (Tex. Crim. App. 2005).

Petitioner was put on notice of the deadly-weapon allegations in

the indictment.  Therefore, it was unnecessary for the trial

court to make a deadly weapon finding orally.  The affirmative

findings in the judgments were sufficient.  *Id.*  Petitioner is

not entitled to relief under these claims.

### *(6) Prosecutorial Misconduct*

Finally, petitioner claims the state engaged in misconduct

as follows:

> Ms. Lesley Arterburn admitted to a friend via email
> that Patrick Berry had told her and the other witnesses
> for the State in a meeting the day before trial that
> the police knew Jason was out of bullets, based on what
> Curtis Proctor had told them on the night of the
> incident.  Additionally, Rob Christianson, who worked
> for the Hood County district attorney, told Ms.
> Arterburn that police knew the Petitioner was unarmed
> that night and was only trying to commit suicide by
> police and that the police were not going to
> accommodate him.  This tainted the State's witness's
> testimony and proves that the police were aware the
> weapon Petitioner had was not loaded, which changed it
> from a deadly weapon to a piece of metal.

Pet. 7D1, ECF No. 1.

Based on this argument, petitioner raised an objection to

"the submission of a deadly-weapon finding," during the jury-

charge conference, but the trial court rejected the argument.  RR

4 of 6, at 113-14, ECF No. 17-4.  Petitioner did not file in the

state courts any affidavits or other evidence to support his
contentions.   Conclusory, unsubstantiated allegations do not
raise constitutional issues in federal habeas proceedings.   *Ross
v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983).   Furthermore, it
appears that under state law whether a gun is loaded or unloaded
at the time of the alleged threat is not significant to a
determination of a deadly-weapon finding.   *Adame v. State,* 69
S.W.3d 581, 582 (Tex. Crim. App. 2002); *Tidwell v. State,* 187
S.W.3d 771, 775-76 (Tex. App.–Texarkana 2006, pet. stricken).
This court defers to the state courts' application and
interpretation of its own law.   *Creel v. Johnson,* 162 F.3d 385,
395 (5th Cir. 1998); *Weeks v. Scott,* 55 F.3d 1059, 2063 (5th Cir.
1995).   Petitioner is not entitled to relief under this claim.

### Summary

In summary, the record supports the state courts' denial of
the claims presented in this federal habeas proceeding.   The
state courts' adjudication of the claims is not contrary to or
involve an unreasonable application of clearly established
federal law, as determined by the Supreme Court, in light of the
record as a whole.   Accordingly, it is entitled to deference and
the presumption of correctness.

24

### *Evidentiary Hearing*

Petitioner requests an evidentiary hearing, however his claims were adjudicated on the merits in state court, and he has failed to overcome the limitation of § 2254(d)(1) on the record that was before the state court. *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398-1401 (2011). Thus, no evidentiary hearing is warranted.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED June 22, 2015.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

25